IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JOSEPH A. SHERMAN,

     Petitioner,          No. 2:06-cv-02415 ALA (HC)

   vs.

YOLO COUNTY CHIEF PROBATION OFFICER,

     Respondent,        <u>ORDER</u>

_____/

     Petitioner Joseph Sherman is a former state prisoner, proceeding *pro se*, seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254(a) based on alleged violations of his federal constitutional rights. (Doc. 1.) Pending before this Court are Petitioner's application for a writ of habeas corpus, filed November 1, 2006 (Doc. 1), Respondent's answer, filed September 27, 2007 (Doc. 17), and Petitioner's traverse, filed October 29, 2007 (Doc. 22.)

     Petitioner's application for a writ of habeas corpus alleges four grounds for relief: (1) insufficient evidence to support his conviction in violation of his Fourteenth Amendment right to due process; (2) the sections of the California Penal Code Petitioner was convicted of having violated are unconstitutional because they make illegal conduct that is protected under the First Amendment; (3) unjust delay of his trial in violation of his Sixth Amendment right to a speedy

trial; and (4) unjust exclusion and manipulation of evidence violated his Fourteenth Amendment due process rights. For the following reasons, Petitioner's application is denied.

# I

On October 8, 2004, Petitioner was convicted in Yolo County Superior Court for resisting or obstructing a peace officer, obstructing or intimidating business operations or customers, and failing to leave or return within seven days to school property in violation of Cal. Penal Code §§ 148(a)(1), 602.1(a), and 626.6(a)(1). (Lod. Doc. 1, at 75-77.) He was sentenced to serve 270 days in county jail to commence on January 11, 2005. The court also imposed thirty-six months of informal probation. (Lod. Doc. 1, at 136.) Petitioner is no longer in jail.

On August 12, 2005, the trial court adopted the People's proposed statement (with one minor spelling modification) pursuant to California Rules of Court 8.789, formerly Rule 187.5, which provides that where there is no trial court transcript, a party appealing a misdemeanor conviction shall proceed by way of a settled statement on appeal. (Lod. Doc. 1, at 102.) On October 27, 2005, the Appellate Division of the Yolo County Superior Court ordered that the Petitioner file an opening brief on or before November 16, 2005. (Lod. Doc. 1, at 116.) Petitioner failed to file an opening brief. (Lod. Doc. 1, at 120.) On November 21, 2005, Petitioner's direct appeal was dismissed by the Appellate Division of the Yolo County Superior Court because "the court issued a briefing schedule . . . that required the appellant to file an opening brief on or before November 16, 2005 . . . [and] appellant did not file an opening brief." (Lod. Doc. 1, at 120.)

Petitioner filed a petition for a writ of habeas corpus raising the same federal constitutional violations alleged in the instant application in the California Court of Appeal for the Third Appellate District on September 30, 2005 (Case No. C050876). That petition was summarily denied on October 6, 2005. Petitioner filed a habeas petition in the California Supreme Court on October 14, 2005 (Case No. S137986). It was summarily denied on November 2, 2005. (Lod. Docs. 2, 3.)

In the answer to Petitioner's application, Respondent contends that Petitioner's claims are procedurally barred because he failed to file a timely opening brief in his direct appeal. (Ans. at 10). Respondent cites the California Supreme Court's reliance on *In re Dixon*, 41 Cal.2d 756 (1953) for this proposition. *In re Dixon* stands for the proposition that "habeas corpus cannot serve as a substitute for an appeal," and absent "special circumstances constituting an excuse for failure to employ that remedy, the writ will not lie where the claimed errors could have been, but were not, raised upon a timely appeal from a judgment of conviction." *Id*. at 759. The California Supreme Court's citation to *Dixon* appears to indicate it declined to reach the merits of Petitioner's claims because they were procedurally barred. *See La Crosse v. Kernan*, 244 F.3d 702, 704-05 (9th Cir. 2001) ("The Dixon rule bars California state courts from granting habeas relief to a prisoner who failed to pursue the claims raised in his habeas petition on direct appeal from his conviction, unless his claims fall within an exception to the rule.") Petitioner's direct appeal, however, was still pending when the California Supreme Court issued its summary denial of his habeas corpus petition on November 2, 2005.

On September 15, 2008, this Court directed the parties to show cause why the California Supreme Court did not err in its denial of Petitioner's state petition. (Doc. 26.) In response to the order to show cause, Respondent indicated that California Supreme Court's citation to *In re Dixon* was "problematic" because Petitioner's direct appeal was still pending at the time his state habeas petition was summarily denied. (Doc. 27).[1] Respondent contends that "the more reasonable conclusion is that the California Supreme Court was unaware that Petitioner's appeal was still pending when it applied the procedural bar." *Id.* Because Respondent has conceded that the California Supreme Court's reliance on *In re Dixon* in dismissing Petitioner's state habeas petition was apparently in error, this Court concludes Respondent has abandoned the contention that Petitioner's claims were procedurally defaulted.

---

[1] Petitioner did not respond, or otherwise comply, with the Court's order to show cause.

3

In the answer, Respondent argues that Petitioner has satisfied the exhaustion requirement because he provided the highest state court with a full and fair opportunity to consider each claim before presenting it to the federal court. (Doc. 27.) Alternatively, Respondent asserts that if the Court finds Petitioner has not exhausted his claims, Petitioner should be excused from exhaustion because of the "absence of available State Corrective Process." *Id*. (citing 28 U.S.C. § 2254(b)(1)(B)).[2] Respondent also asserts that even if Petitioner did not exhaust the remedies available to him in the state courts, this Court may nevertheless deny Petitioner's application on the merits under 28 U.S.C. § 2254(b)(2).[3]

## II

In enacting the Anti-terrorism and Effective Death Penalty Act of 1996, Congress has limited the power of a federal court to grant habeas corpus relief in § 2254(d). The Supreme Court explained in *Lockyer v. Andrade*, 538 U.S. 63 (2003) that § 2254(d)(1) "circumscribes a federal habeas court's review of a state-court's decision." *Id.* at 70. In *Woodford v. Visciotte* 537 U.S. 19 (2002), the Court instructed that § 2254(d) "demands that state court decisions be given the benefit of the doubt." *Id.* at 24. Section 2254(d) provides as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim

---

[2] 28 U.S.C. § 2254(b) states that
> (1) [a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—
>   (A) the applicant has exhausted the remedies available in the courts of the State; or
>   (B) (i) there is an absence of available State corrective process; or
>   (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

[3] 28 U.S.C. § 2254(b)(2) provides that
> (2) [a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the state.

      (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

      (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

As there is no state decision on the merits of Petitioner's claims, this Court must review Petitioner's claims *de novo*. *See Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002) (holding that a federal habeas court must review *de novo* purely legal issues and mixed questions of law and fact when the state court has not reached the merits of a claim thereafter presented to a federal habeas court).

## A

Petitioner's first and second claims are that there was insufficient evidence to support his conviction for resisting or obstructing a peace officer at trial, in violation of his Fourteenth Amendment right to due process, and that the conduct for which he was arrested was protected under his First Amendment right to freedom of speech.

There is no real dispute between Petitioner and Respondent regarding the events that led to Petitioner's arrests on June 10, 2004 and June 16, 2004. On June 10, 2004, Petitioner made comments to three female U.C. Davis students in a campus coffeehouse. Petitioner admits that the comments he made "were not well-received." (Pet. at 2); (Lod. Doc.1, at 107-08.) The female students complained to campus police who, after determining that Petitioner was not a student, informed him that he had no right to be on campus and asked Petitioner to leave the premises. Petitioner concedes that when he was asked to leave the campus by U.C. Davis police officers, he refused and was subsequently arrested and charged with violating California Penal

Code 626.6(a)(1).[4] (Pet. at 3); (Lod. Doc.1, at 107-08).  Petitioner also concedes that on June 16, 2004, he was arrested while "evangelizing" at the Nugget Market after the store manager, Mr. Hutchinson, asked Petitioner to leave due to customer complaints.  Petitioner states that when he refused to leave, Mr. Hutchinson reported him to the police. (Pet. at 3-4); (Lod. Doc.1, at 107-08).  According to Petitioner he was seized by police officers and arrested.  Petitioner was then charged with resisting or obstructing a peace officer and obstructing or intimidating business operations or customers in violation of California Penal Code §§ 148(a)(1) and 602.1(a).[5] (Pet. at 4-5.)

---

[4] California Penal Code 626.6(a)(1) provides that
> (a) [i]f a person who is not a student, officer or employee of a college or university and who is not required by his or her employment to be on the campus or any other facility owned, operated, or controlled by the governing board of that college or university, enters a campus or facility, and it reasonably appears to the chief administrative officer of the campus or facility, or to an officer or employee designated by the chief administrative officer to maintain order on the campus or facility, that the person is committing any act likely to interfere with the peaceful conduct of the activities of the campus or facility, or has entered the campus or facility for the purpose of committing any such act, the chief administrative officer or his or her designee may direct the person to leave the campus or facility. If that person fails to do so or if the person willfully and knowingly reenters upon the campus or facility within seven days after being directed to leave, he or she is guilty of a misdemeanor and shall be punished as follows:
>
> (1) Upon a first conviction, by a fine of not more than five hundred dollars ($500), by imprisonment in the county jail for a period of not more than six months, or by both that fine and imprisonment.

Cal. Penal Code § 626(a)(1).

[5] California Penal Code 148(a)(1) provides that
> (a)(1) Every person who willfully resists, delays, or obstructs any public officer, peace officer, or an emergency medical technician, as defined in Division 2.5 (commencing with Section 1797) of the Health and Safety Code, in the discharge or attempt to discharge any duty of his or her office or employment, when no other punishment is prescribed, shall be punished by a fine not exceeding one thousand dollars ($1,000), or by imprisonment in a county jail not to exceed one year, or by both that fine and imprisonment.

Cal. Penal Code § 148(a)(1).

In determining whether there is evidence sufficient to support a conviction, the reviewing court must determine whether when "viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found [the defendant guilty of] the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). In § 2254 proceedings, "a federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Id*. at 326.

### 1

Petitioner maintains that he did not resist the officers when they came to the Nugget Market, and that there was insufficient evidence to support his conviction on that count. The settled statement on appeal, however, indicates that several witness testified at the jury trial that Petitioner struggled with the police officers and, for that reason, he was thrown to the ground and handcuffed. (Lod. Doc. 1, at 109-10.)[6] Therefore, Petitioner's contention that he did not

---

California Penal Code § 602.1(a) provides that
> (a) Any person who intentionally interferes with any lawful business or occupation carried on by the owner or agent of a business establishment open to the public, by obstructing or intimidating those attempting to carry on business, or their customers, and who refuses to leave the premises of the business establishment after being requested to leave by the owner or the owner's agent, or by a peace officer acting at the request of the owner or owner's agent, is guilty of a misdemeanor, punishable by imprisonment in a county jail for up to 90 days, or by a fine of up to four hundred dollars ($400), or by both that imprisonment and fine.

Cal. Penal Code § 602.1(a).

[6] The Settled Statement on Appeal reflects that Gregory Hutchinson, the manager of the Nugget Market where Petitioner was arrested on June 16, 2004, testified at trial that "[w]hen the officers attempted to take Appellant into custody he refused to put his hands behind his back and struggled with them. The officers physically forced Appellant to the ground, handcuffed him and put him in the patrol car." (Lod. Doc. 1, at 109). Officer Sharon Irwin also testified that on June 16, 2004 she was dispatched to Nugget Market because of a complaint of "a man trespassing" and "refusing to leave." Officer Irwin testified that she told Appellant he was under arrest and that as she attempted to take Appellant into custody he "refused to put his hands behind his back and struggled against her and Officer Rifredi." (Lod. Doc. 1., at 109). Officer

resist the officers is not supported by the record. (Pet. at 5.) Petitioner has conceded that he committed the acts for which he was arrested. Petitioner's first claim that there was insufficient evidence to support his conviction is meritless.

**2**

Petitioner also argues that the code sections under which he was convicted, Cal. Penal Code §§ 626(a)(1) and 602(1)(a), violate his First Amendment right to freedom of speech, freedom of association and of assembly. (Pet. at 6-7.) According to Petitioner, his comments at the U.C. Davis coffee house were "misunderstood" and "if one slip of the tongue results in false imprisonment, we're under Gestapo rule!" (Pet. at 6) Petitioner cites *Ashcroft v. Free Speech Coalition*, 535 U.S. 234 (2002) in support of his contention that the comments he made to the women at the coffee house were protected under the First Amendment, even if they were offensive, rendering Cal. Penal Code §§ 626(a)(1) unconstitutional. (Pet. at 6).

The restriction of certain conduct on university campuses is constitutionally valid. *See Tinker Des Moines Independent Community School District*, 393 U.S. 503, 507 (1969) ("[T]he Court has repeatedly emphasized the need for affirming the comprehensive authority of States and of school officials, consistent with fundamental constitutional safeguards, to prescribe and control conduct in the schools."). "A university's mission is education, and decisions of [the Supreme] Court have never denied a university's authority to impose reasonable regulations compatible with that mission upon the use of its campus and facilities." *Widmar v. Vincent*, 454 U.S. 263, 268 (1981). Universities have a 'right to exclude even First Amendment activities that violate reasonable campus rules or substantially interfere with the opportunity of other students to obtain an education." *Id.* at 277.

Petitioner was not a student at U.C. Davis when he was convicted of committing an act or

---

Irwin testified that at this point Officer Rod Rifredi "leaned his chest against Appellant's back and forced him to the ground." (Lod. Doc. 1, at 109). The officer handcuffed Mr. Sherman and placed him in the patrol car. (Lod. Doc. 1, at 109). Officer Rifredi's testimony corroborates Mr. Hutchinson and Officer Irwin's accounts of the incident.

acts "likely to interfere with the peaceful conduct of the activities of the campus….", and therefore lacked even the status of being a current student entitled to use of the facilities of the university. "Courts do not and cannot intervene in the resolution of conflicts which arise in the daily operation of school systems and which do not directly and sharply implicate basic constitutional values." *Epperson v. Ark.*, 393 U.S. 97, 104 (1968). Petitioner was arrested because he refused to leave the U.C. Davis campus after being asked to do so by the U.C. Davis campus police. Petitioner has not met his burden of demonstrating that the conduct for which he was arrested implicates basic constitutional values, or that his conviction of having violated Cal. Penal Code § 626.6(a)(1) was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

Petitioner similarly argues that Cal. Penal Code § 602(1)(a) violates his First Amendment right to freedom of speech, freedom of association and of assembly, because his conduct at the Nugget Market was protected speech. (Pet. at 6-7.) The United States Supreme Court "has never held that a trespasser or an uninvited guest may exercise general rights of free speech on property privately owned and used nondiscriminatorily for private purposes only." *Lloyd Corp. v. Tanner*, 407 U.S. 551, 568 (1972). Members of the public, whether invited as customers or not, do not have the same right of free speech at privately owned shopping centers as they would have at public facilities. "[P]roperty [does not] lose its private character merely because the public is generally invited to use it for designated purposes." *Id.* at 569. Respondent correctly contends that "Petitioner has no right under the First Amendment to frighten or intimidate employees and customers" as they enter and leave the Nugget Market. (Ans. at 12.)

### 3

In his third claim, Petitioner argues that his trial was unjustly delayed in violation of his right to a speedy trial pursuant to the Sixth Amendment. Petitioner cites no legal authority in support of his claim that his arrests on June 10, 2004 and June 16, 2004 and subsequent

conviction almost four months later on October 8, 2004, constitutes a Sixth Amendment violation of right to a speedy trial.

In *Barker v. Wingo*, 407 U.S. 514 (1972), the Supreme Court outlined four factors for determining a speedy trial violation: "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Id.* at 530. In *Doggett v. United States*, 505 U.S. 647 (1992), the Supreme Court noted that "[d]epending on the nature of the charges, the lower courts have generally found post-accusation delay 'presumptively prejudicial' at least as it approaches one year." *Id.* at 647 n.1.

Respondent contends that the delay was largely due to Petitioner's failure to appear for the originally scheduled trial confirmation conference on July 28, 2004. As a result, the court vacated the trial date that had been previously scheduled for August 5, 2004. On September 15, 2004, Petitioner requested that the trial be continued because he was due to appear in Sacramento County on another matter. (Ans. at 13, citing to Lod. Doc. 1, at 106.) Accordingly, Respondent maintains that Petitioner did not consistently demand a speedy trial. *Id.* Petitioner argues that he did in fact appear at the court on July 28, 2004 but that he arrived late. (Pet. at 9.) Petitioner's failure to appear resulted in the jury trial being postponed for two months. This delay was caused by Petitioner. Petitioner has failed to demonstrate that the delay in his trial constitutes a Sixth Amendment violation under *Barker*, or any other clearly established federal law, as determined by the Supreme Court of the United States. 28 U.S.C. § 2254(d)(1).

**4**

In his fourth claim, Petitioner contends that the evidence was unjustly manipulated when the trial court granted the People's *in limine* motion "to exclude all testimony, proof, and reference to previous acts of kidnap, false arrests, etc." (Pet. at 10.) "A defendant's right to present relevant evidence is not unlimited, but rather is subject to reasonable restrictions." *United States v. Scheffer*, 523 U.S. 303 (1998). "A state court's evidentiary ruling is grounds for Federal habeas corpus relief only if it renders that state proceeding so fundamentally unfair as to

violate due process." *Bueno v. Hallahan*, 988 F.2d 86, 87 (9th Cir. 1993). Petitioner contends that he was denied the opportunity to present evidence proving "the police and district attorney's conspiracy of repeated kidnapping and invidious persecution of him in a systematic attempt to ruin him." (Pet. at 10.) The trial court determined that Petitioner was barred from presenting evidence of his prior arrests and dispositions in those cases involving similar conduct because it would be hearsay and irrelevant to the issues at trial and would only confuse jurors as to the issues in dispute. (Lod. Doc. 1, at 14-15.) "It is within the trial court's discretion to determine which issues are relevant." *Wood v. Alaska*, 957 F.2d 1544, 1549 (9th Cir. 1992). Petitioner's contention that this evidence would prove an ongoing conspiracy to ruin him is unsupported by the evidence in the record.[7]

Petitioner also asserts that the charges in the complaints were unjustly consolidated. He maintains that is Count I and Count II took place at Nugget Market on June 16, 2004 while Count III alleges conduct that occurred on the UC Davis campus on June 10, 2004. Petitioner argues that, because Counts I and II took place six days after Count III, they were unrelated, and should not have been consolidated. Petitioner alleges that the court's consolidation of the cases resulted in jury prejudice.

To establish a violation of his Fourteenth Amendment right to due process Petitioner "must show that the jury was actually inflamed" and that as a result the state trial was "fundamentally unfair." *Park v. California*, 202 F.3d 1146, 1150 (9th Cir. 2000). Under California Penal Code § 954, the court may consolidate "two or more different offenses of the same class of crimes." Cal. Penal Code § 954. "Offenses which are connected in their commission or are of the same class of crimes, but are charged in separate pleadings, may be

---

[7] Petitioner contends in his application that "seven years ago" a judge in Yolo County Superior Court stated that he had "'a number of these cases come before [him] involving Mr. Sherman. What always happens is, Mr. Sherman isn't doing anything wrong and these people are violating his rights. I'm going to get an injunction myself preventing any more of this harassment if it doesn't come to a halt.'" (Pet. at 12.) Petitioner has not provided any evidentiary support for this allegation.

consolidated for trial in order to promote judicial efficiency." *People v. Koontz*, 27 Cal.4th 1041, 1074 (2002), *cert. denied*, 537 U.S. 1117 (2003).

The conduct alleged in each count took place at different locations, involved different witnesses, and violated different sections of the California Penal Code. The Yolo County Superior Court granted the People's motion to consolidate the complaints for trial because the charged offenses belong to the same class of crime, and relate to the defendant's failure to leave businesses and school grounds upon the request of peace officers. (People's Mtn. to Consolidate, Lod. Doc. 1, at 5.) Petitioner has failed to allege any facts that would support his claim that the jury was prejudiced by the joinder.

Assuming *arguendo* that the exclusion of evidence and joinder violated California law, it is well-established that "[f]ederal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 765 (1990).

**IV**

Based on the foregoing analysis of Petitioner's claims, it is HEREBY ORDERED that:

1. Petitioner's application for writ of habeas corpus is hereby DENIED.
2. The clerk is directed to enter judgment and close the case.

DATED: November 3, 2008

/s/ Arthur L. Alarcón
UNITED STATES CIRCUIT JUDGE
Sitting by Designation